Argued March 17, affirmed June 11, petition for rehearing
denied July 7, petition for review denied by Supreme
Court September 9, 1970

# JOHN MARSHALL WHEELER, *Appellant, v.*
# CUPP, *Respondent.*
## 470 P2d 957

*Gary D. Babcock*, Public Defender, Salem, argued the cause and filed the brief for appellant.

*Jim G. Russell*, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Lee Johnson, Attorney General, Jacob B. Tanzer, Solicitor General, and James A. Sanderson, Assistant Attorney General, Salem.

Before Schwab, Chief Judge, and Fort and Branchfield, Judges.

FORT, J.

This post-conviction proceeding arises out of the defendant's conviction for unarmed robbery, ORS 163.290, and the subsequent dismissal of an appeal therefrom.

The petition under consideration asserts five causes of action. The first claims the improper use at trial of a confession and of an in-custody identification obtained before he was advised of either his right to remain silent or his right to counsel. The case was

tried before a jury. An *in camera* hearing was held by the court to determine the admissibility of the confession, and the court held that it was admissible. Following his conviction the defendant appealed. Some months later and while the appeal was pending, the defendant, following a visit with his attorney at the penitentiary, in writing directed his counsel to dismiss the appeal. This was done.

The state demurred to plaintiff's first cause of action on the grounds the facts stated were insufficient to justify exercise of jurisdiction or to authorize the relief demanded. The trial court sustained the demurrer.

The position of the state is that the question of the admission of the confession was one which was properly determinable upon appeal from the judgment. We note the notice of appeal filed therefrom did embrace that ruling. Thus, the state contends, since the defendant, through his attorney, moved for and obtained an order from the Supreme Court dismissing his own appeal, he may not now in a post-conviction proceeding raise the identical question which he could have had reviewed therein.

The general rule in Oregon since *Schmeer v. Schmeer*, 16 Or 243, 17 P 864 (1888), in civil cases, and *State v. Keeney*, 81 Or 478, 159 P 1165, 161 P 701 (1916), in criminal cases, has been "that when a party perfects an appeal and then abandons it, his right of appeal is exhausted, the power over the subject is *functus officio*, and cannot be exercised the second time." *Hill v. Lewis*, 87 Or 239, 240, 170 P 316 (1918).

The Post Conviction Hearing Act, under which this proceeding has been brought, includes the following provision:

"* * * The remedy created * * * does not

replace or supersede * * * direct appellate review of the sentence or conviction, and a petition for relief * * * shall not be filed while * * * appellate review remain[s] available. * * *" ORS 138.540(1).

Concerning the availability of relief as affected by prior judicial proceedings, ORS 138.550 states:

"The effect of prior judicial proceedings concerning the conviction of petitioner which is challenged in his petition shall be as specified in this section and not otherwise:

"(1) The failure of petitioner to have sought appellate review of his conviction, or to have raised matters alleged in his petition at his trial, shall not affect the availability of relief under ORS 138.510 to 138.680. * * *

"(2) When the petitioner sought and obtained direct appellate review of his conviction and sentence, no ground for relief may be asserted by petitioner in a petition for relief under ORS 138.510 to 138.680 unless such ground was not asserted and could not reasonably have been asserted in the direct appellate review proceeding. * * *"

Collins and Neil, in a carefully considered article entitled, *The Oregon Postconviction-Hearing Act*, 39 Or L Rev 337, 356-57 (1960), state concerning the foregoing:

"Under subsection (1) the failure of a defendant to assert error at the trial or a failure to appeal from the conviction does not preclude the assertion of such error in a proceeding under this act. A different rule is provided in subsection (2) when a direct appeal from the conviction was taken by petitioner. Any question actually raised or which could reasonably have been raised on the appeal cannot be litigated in a proceeding under the act.

"These two subsections adopt substantially the rules heretofore applied in habeas corpus cases as

to the effect of appeal or failure to appeal directly from the conviction. Several Oregon cases have stated that habeas corpus will not lie where an appeal could have raised the same issue but was not taken. The cases announcing this rule have invariably gone on to deny relief on the merits of the issues raised. If the court applied this rule literally, there would, of course, be no postconviction relief available for even the most obvious constitutional defects if they could have been raised by appeal. There is but half truth in the assertion that habeas corpus cannot serve the office of an appeal. Of course, postconviction relief should not permit a prisoner to raise every issue which he could have raised by appeal. The Oregon courts have sometimes failed to distinguish between issues raising defects of such magnitude as to render the conviction and imprisonment thereon unconstitutional and those of a less serious nature. Only in the latter cases are postconviction remedies justifiably denied where appeal was available. The Oregon courts have recognized this by failing to mention the failure to appeal when a postconviction attack has been held meritorious.

"Where the prisoner took an appeal from his conviction, and could have raised or actually did raise the claims asserted in the habeas corpus proceeding, the Oregon court has generally refused to decide the merits of the petition. However, this rule has been abandoned on questions of 'public importance.' Subsection (2) would appear to state a justifiable rule for this situation, allowing postconviction attack only when a claim could not reasonably have been raised on the appeal. If a petitioner had a reasonable opportunity to present a question before the highest court of the state, there is no substantial reason why further judicial time should be spent in litigating the question in other state courts."

In *Cain v. Gladden*, 247 Or 462, 430 P2d 1015 (1967),

the Supreme Court had before it a post-conviction petition, instituted after it had affirmed the conviction on direct appeal,[*] asserting alleged errors concerning the propriety of two rulings during the trial. One related to claimed suppression by police of the result of a prior voice identification test by a witness who identified him at his trial, and the other to the propriety of certain arguments made in summation by the state. Neither contention was viewed as of constitutional dimension or as a matter of "public importance." The trial court sustained a demurrer to each contention. The Supreme Court affirmed, stating:

> "Petitioner failed to allege in his petition facts sufficient to demonstrate that the fourth and fifth grounds for relief could not reasonably have been asserted in the direct appellate review. He did not state that the facts underlying his fourth and fifth grounds for relief were not known to him at the time of his direct appeal. Nor did he make a sufficient showing that his grounds for relief are based upon new constitutional principles that had not been recognized at the time of his direct appeal. * * *" 247 Or at 464.

In the case at bar, however, the petitioner does allege the infringement of rights—that of the right to remain silent and to the assistance of counsel—both of which are of constitutional dimension.

In *North v. Cupp*, 254 Or 451, 454, 461 P2d 271 (1969), the Supreme Court considered the question,

> "* * * whether the provisions of Oregon's Post Conviction Procedure Act dictate that petitioner prevail upon a showing that constitutionally defective evidence was introduced at his trial of

---

[*] State v. Cain, 230 Or 286, 369 P2d 769 (1962).

conviction despite the absence of any objection to its introduction. * * *"

On the facts there presented, it held at 455:

"* * * Whether there has been a substantial denial of petitioner's constitutional rights by the admission of the evidence during his trial of conviction is the question at hand. This will be determined by the circumstances under which he failed to raise the issue at trial. The question is not predetermined by ORS 138.550(1)."

Here, however, we are not faced with the problem of failure to have made appropriate objection to a proffer of evidence constitutionally inadmissible, as in *North v. Cupp,* supra. In the trial court there was appropriate objection and an *in camera* hearing duly held. The adverse ruling was regularly challenged on appeal.

 To overcome the general rule above set out, it is not enough to claim in a post-conviction proceeding that a ruling, duly objected to and preserved on appeal, was of constitutional dimension, when the direct appeal was dismissed upon the motion of his attorney made with the written consent of the defendant. We hold the petitioner must allege facts sufficient to show fraud, coercion or such gross incompetence of counsel as to amount in law to a denial of the right to counsel guaranteed by the Sixth Amendment. No such allegations were contained in the first cause of action. The demurrer was correctly sustained. *Clark v. Gladden,* 247 Or 629, 432 P2d 182 (1967); *Lay v. Cupp,* 1 Or App 296, 462 P2d 443 (1969).[2]

_____

[2] For example of a petition sufficiently alleging facts in support of a claim of incompetence of counsel, see Herron v. Cupp, 1 Or App 300, 462 P2d 444 (1969).

The second cause of action relates first to the failure of his counsel to òbject to alleged hearsay evidence, second to a claim that his attorney in the opening statement admitted the defendant's guilt as charged without his prior knowledge and against his instruction, and third to a failure to subpoena certain witnesses. A demurrer to it was sustained.

■ Concerning the first claim, petitioner nowhere asserts the matter was not otherwise established by other competent evidence. Under *State v. Randolph*, 251 Or 45, 444 P2d 545 (1968), such an allegation is essential.

■ The second claim fails to allege that the opening statement as made was not a part of trial strategy, nor does it set out the language actually used by the attorney which defendant claims was an admission of guilt.

■ The petitioner nowhere claims he objected to the court concerning the failure of counsel to call a witness desired by him, as required by *State v. Gaffield*, 1 Or App 202, 460 P2d 863 (1969). The demurrer to this cause of action was correctly sustained.

■ The third cause of action relates to a statement made in final argument by the state alleged to be a comment in violation of *Chapman v. California*, 386 US 18, 87 S Ct 824, 17 L Ed 2d 705, 24 ALR3d 1065 (1967), on the failure of defendant to take the stand. The trial court here found. that neither petitioner nor his counsel objected to it or moved for a mistrial, and further, that the statement in fact in its context "did not imply admission of guilt by failure of petitioner to take the stand." No allegation of incompetence of counsel is made. *North v. Cupp*, supra, held that the rule of waiver under such circumstances serves a

legitimate state interest within the rule of *Henry v. Mississippi,* 379 US 443, 85 S Ct 564, 13 L Ed 2d 408 (1965). Furthermore, the finding of the trial court concerning the context of the statement is supported by the transcript. The assignment is without merit.

■ The fourth cause of action raises the Sixth Amendment question of a unanimous verdict. This is disposed of by *State v. Gann,* 254 Or 549, 463 P2d 570 (1969), and is without merit.

The petitioner, following the dismissal of the appeal on his own motion, claims in his fifth cause of action that motion was in fact not a voluntary one because he agreed to it only to secure the dismissal of an enhanced penalty proceeding brought against him in connection with this very conviction under the habitual criminal act.

ORS 168.065 directs that the trial "court of conviction of the principal offense shall

"* * * * * *

"(6) If the defendant admits, or the court otherwise finds, the former conviction alleged, vacate any sentence imposed upon conviction of the principal offense, impose any new sentence permitted or required by law, and, unless the new sentence is for the defendant's natural life, deduct from the new sentence the period of imprisonment on the sentence so vacated."

ORS 168.085 directs in that event the imposition of sentences, respectively not more than double for one prior felony conviction, not more than treble for two prior felony convictions, and up to life imprisonment for three or more felony convictions. The last applied to this petitioner.

It is conceded here that some months following the timely perfecting of the appeal the petitioner, while incarcerated at the penitentiary, after consultation with and acting through his attorney, moved to have his appeal dismissed. This was done. His contention now is that in reality he had no choice but to agree, since if his appeal failed he then faced a sentence up to life imprisonment rather than the ten-year sentence actually imposed. He concedes that the habitual criminal proceeding was in fact dismissed by the state in accordance with the agreement some eight days before the order dismissing his appeal was entered.

The state demurred to this cause of action. The court overruled it and after conducting a fact-finding hearing in which petitioner was represented by the state public defender, held that his agreement and resulting motion to dismiss were not coerced and that he had effective representation by counsel in connection therewith. This ruling is challenged by the fifth assignment of error.

In *North v. Cupp*, supra, the Supreme Court, recognizing the possible effect upon an apparently voluntary act of an inherently coercive situation, said:

"Petitioner bases his right to raise now the constitutional objection to the admissibility of the evidence on *Fay v. Noia*, 372 US 391, 83 S Ct 822, 9 L Ed 2d 837 (1963), and *Henry v. Mississippi*, 379 US 443, 85 S Ct 564, 13 L Ed 2d 408 (1965). In *Fay v. Noia* a state prisoner failed to appeal the admission in evidence of an allegedly coerced confession. He was permitted to assert the claimed inadmissibility of the confession in federal habeas corpus. We believe the case is inapplicable to the present situation for two reasons. First, the prisoner was in a position where he really had no choice because he was coerced by the possible in-

fliction of the death penalty upon retrial, and, thus, the circumstances came within one of the well recognized exceptions to the rule requiring a contemporaneous objection at trial. * * *" 254 Or at 460.

■ We think the petitioner here had the right to raise the claim that his motion to dismiss his appeal was coerced by the threat of the habitual criminal proceeding.

The problem thus presented is closely analogous to that of plea bargaining. The problems inherent in plea bargaining are discussed at length in *The Challenge of Crime in a Free Society* (1967), a report of the President's Commission on Law Enforcement and Administration of Justice (commonly referred to as the Crime Commission Report), and its Task Force Report: *The Courts*, under the general heading of "The Negotiated Plea of Guilty." Generally, the report neither endorses nor condemns the use of the system[⑧] but in its discussion points out some serious concerns.

The Task Force Report states at 11:

"The most troublesome problem is the possibility that an innocent defendant may plead guilty because of the fear that he will be sentenced more harshly if he is convicted after trial or that he will be subjected to damaging publicity because of a repugnant charge. * * *"

---

[⑧] See also: *Standards Relating to Pleas of Guilty*, Part III: "Plea Discussions and Plea Agreements," promulgated by the American Bar Association Project on Minimum Standards for Criminal Justice, Approved Draft (1968). The standards section, 3.1, approves the practice in certain cases, subject to several limitations; D. Newman, *Conviction—The Determination of Guilt or Innocence Without Trial* (1966); Note, The Unconstitutionality of Plea Bargaining, 83 Harv L Rev 1387 (1970); Note, Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas, 112 U Pa L Rev 865 (1964).

The analogy from the foregoing to the contention of the defendant here that he was induced by fear of the harsher sentence of life imprisonment under ORS 168.065 to dismiss what would otherwise prove to be a valid appeal is obvious.

The report also states, at 10:

"Because of the invisibility of the plea bargaining system, the essential issues involved have generally not received adequate consideration by the courts. . Some courts have, however, begun to look at the system for what it is and to focus on the need to regulate it to assure that neither public nor private interests are sacrificed. As a Federal Court of Appeals noted in a recent case:

" '* * * In a sense, it can be said that most guilty pleas are the result of a "bargain" with the prosecutor. But this, standing alone, does not vitiate such pleas. A guilty defendant must always weigh the possibility of his conviction on all counts, and the possibility of his getting the maximum sentence, against the possibility that he can plead to fewer, or lesser, offenses, and perhaps receive a lighter sentence. The latter possibility exists if he pleads guilty * * *.

" 'No competent lawyer, discussing a possible guilty plea with a client, could fail to canvass these possible alternatives with him. Nor would he fail to ascertain the willingness of the prosecutor to "go along." * * *

" 'The important thing is not that there shall be no "deal" or "bargain," but that the plea shall be a genuine one, by a defendant who is guilty; one who understands his situation, his rights, and the consequences of the plea, and is neither deceived nor coerced.' [Cortez v. United States, 337 F2d 699, 701 (9th Cir 1964), cert den 381 US 953 (1965).]"

In a recent trilogy[1] decided May 4, 1970, the Supreme Court of the United States considered questions arising out of the entry of pleas of guilty, including many of those inherent in plea bargaining, and indicated its approval of pleas of guilty intelligently made by a defendant represented by competent counsel. In the post-conviction case of *McMann v. Richardson,* 397 US 759, 90 S Ct 144, 25 L Ed 2d 763 (May 4, 1970), the court considered at length the effect upon a plea of guilty of a challenge based upon a post-conviction claim that the plea was not in fact voluntary because it was motivated by a confession erroneously thought to be admissible by both petitioner and his counsel, when in fact it was illegally obtained under established constitutional doctrine, and was so treated by the court.

The court there said:

"In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the grounds that counsel may have misjudged the admissibility of the defendant's confession. Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible in evidence depends as an initial matter not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases. * * * Beyond this we think the matter, for the most part, should be left to the good sense and discretion of the trial courts with the admonition that if the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be

[1] Brady v. United States, 397 US 742, 90 S Ct 1463, 25 L Ed 2d 747; Parker v. North Carolina, 397 US 790, 90 S Ct 1458, 25 L Ed 2d 785; McMann v. Richardson, 397 US 759, 90 S Ct 1441, 25 L Ed 2d 763, all decided May 4, 1970.

left to the mercies of incompetent counsel, and that judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts.

"We hold, therefore, that a defendant who alleges that he pleaded guilty because of a prior coerced confession is not, without more, entitled to a hearing on his petition for habeas corpus. * * *" 397 US at 770-71.

In *Brady v. United States,* 397 US 742, 90 S Ct 1463, 25 L Ed 2d 747 (May 4, 1970), the first of the trilogy, the Supreme Court considered a claim that a plea of guilty to a Lindbergh law kidnapping violation was coerced because of a fear of the imposition of the death penalty if he was tried by jury, a provision subsequently held invalid in *United States v. Jackson,* 390 US 570, 88 S Ct 1209, 20 L Ed 2d 138 (1968). The court there said:

"* * * We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." 397 US at 751.

"Although Brady's plea of guilty may well have been motivated in part by a desire to avoid a possible death penalty, we are convinced that his plea was voluntarily and intelligently made and we have no reason to doubt that his solemn admission of guilt was truthful." 397 US at 758.

We think there is an analogous, though not identical, relation between the *McMann* and *Brady* situations and the one here presented. We find the rationale persuasive when applied here to the claimed coercion of petitioner causing him to dismiss his appeal because

of the threat of life imprisonment resulting from the habitual criminal proceeding.

In the fact-finding hearing both the petitioner and his trial court attorney testified at length concerning the circumstances leading up to the dismissal of the appeal. At its conclusion the court found:

"* * * [A]lthough the choice by the petitioner to dismiss the appeal was prompted by the dismissal of habitual criminal proceedings, the dismissal by the petitioner of his appeal was not conditioned on the dismissal by the prosecution of habitual criminal proceedings. Although the motive of the petitioner to appeal was based on the possibility of habitual criminal proceedings, petitioner's choice to dismiss his appeal was voluntary and he was not prohibited from continuing the prosecution of his appeal had he so desired to do so * * *."

■ We have carefully examined the transcript of that testimony and concluded that the findings of the trial court are amply supported by the evidence. We are bound thereby. *Alcorn v. Gladden*, 237 Or 106, 390 P2d 625 (1964); *Endsley v. Cupp*, 1 Or App 169, 459 P2d 448 (1969), Sup Ct *review denied* (1970).

The court having found that the petitioner's motion to dismiss the appeal was, in the words of *Cortez*, supra, "a genuine one" made by a defendant "who understands his situation, his rights, and the consequences" of the motion to dismiss, it follows that petitioner was neither deceived nor coerced into requesting the dismissal of his appeal.

The judgment is affirmed.