Argued October 24, 1972, reversed and remanded
February 12, 1973

JAMES STEWART (No. 74570), *Appellant, v.*
CUPP, *Respondent.*

506 P2d 503

*Howard R. Lonergan,* Portland, argued the cause and filed the brief for appellant.

*John H. Clough,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

SCHWAB, C. J.

Recently the United States Supreme Court held the practice of plea bargaining to be an "essential" and "desirable" part of the administration of criminal justice when "properly administered." *Santobello v. New York,* 404 US 257, 92 S Ct 495, 30 L Ed 2d 427, 432 (1971). One element of proper administration is:

"* * * [W]hen a plea [of guilty] rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* supra, 404 US at 262.

Petitioner's appeal in this post-conviction case presents the problem of applying the above-quoted *Santobello* rule to an involved set of facts. We note that *Santobello* was decided after the post-conviction court's decision in this case.

On October 11, 1968, an indictment was returned against petitioner that charged the following four counts: (1) petitioner enticed a child, Brenda Smock, into a place of concealment with intent to

commit a sex offense in violation of former ORS 167.-045; (2) petitioner assaulted Brenda Smock with intent to rape in violation of former ORS 163.270; (3) petitioner was an accessory to an assault with intent to rape Brenda Smock committed by another child, Carey Richardson, i.e., petitioner induced and caused Carey Richardson to commit such an assault, petitioner thereby violating former ORS 163.270; and (4) petitioner contributed to the delinquency of a minor, Carey Richardson, in violation of former ORS 167.210.

The parties to this proceeding agree that negotiations between the district attorney and petitioner's counsel resulted in an agreement whereby petitioner would plead guilty to counts one and four of the October 11 indictment, and counts two and three would be dismissed. Petitioner's two guilty pleas were accepted. He was sentenced to five years on count one and five years on count four, the sentences to run consecutively. At the district's attorney's motion, counts two and three were then dismissed.

On July 24, 1969, the Oregon Supreme Court, in *State v. Hodges,* 254 Or 21, 457 P2d 491 (1969), held the contributing to the delinquency of a minor statute, former ORS 167.210, to be unconstitutionally vague. Petitioner then initiated post-conviction proceedings attacking, on the authority of *Hodges,* his conviction and sentence under count four of the October 11 indictment. Petitioner prevailed in the circuit court and in this court; our decision is reported *sub nom Blakely v. Cupp,* 2 Or App 110, 467 P2d 138 (1970).

After *Blakely* was decided, on April 8, 1970, a single-count indictment was returned against petitioner charging him with assault with intent to rape Brenda Smock in violation of former ORS 163.270. This is

the same charge that had been count two of the original October 11 indictment and previously dismissed pursuant to the plea bargain.

Petitioner initially plead not guilty to the April 8 indictment. By pre-trial motions petitioner contended that the April 8 indictment should be dismissed on the grounds of double jeopardy and collateral estoppel in that he had previously been charged with the same crime in the October 11 indictment. These motions were denied. Petitioner then changed his plea to guilty. He was sentenced to five years to run consecutively with the five years he was serving on count one of the October 11 indictment.

■ On October 14, 1971, petitioner initiated this post-conviction proceeding claiming his conviction under the April 8 indictment was invalid on the grounds, among others, that the April 8 indictment constituted a violation of the plea agreement made in relation to the October 11 indictment. While petitioner has argued a variety of other matters, we view the plea bargain issue as dispositive of this appeal.[1]

There is no dispute as to the fact that petitioner's guilty pleas to counts one and four of the October 11 indictment were the result of a bargain between himself or his attorney and the district attorney. There is a dispute as to how to best characterize the bargain that was then made. Petitioner contends he agreed to enter guilty pleas to counts one and four, and in return the state agreed to dismiss, i.e., not

---

[1] While petitioner's double jeopardy contentions may find some support in State v. Brown, 262 Or 442, 497 P2d 1191 (1972), the Oregon Supreme Court held the *Brown* rule not retroactive in State v. Fair, 263 Or 383, 502 P2d 1150 (1972). Under pre-*Brown* decisions, petitioner's double jeopardy contentions have no merit. State v. Elliott, 6 Or App 436, 488 P2d 1189 (1971).

prosecute him, on counts two and three. The state contends that petitioner agreed, in effect, to expose himself to the possibility of being sentenced to up to ten years in the penitentiary, i.e., the maximum possible sentences under counts one and four, and in return the state dismissed the second and third counts.

Under petitioner's theory he fully performed his part of the bargain by entering guilty pleas to counts one and four; the fact that a subsequent fortuitous event unrelated to the October 11 indictment, i.e., the *Hodges* decision, made the bargain seem less desirable to the state does not constitute a breach on petitioner's part. This analysis leads petitioner to the conclusion that the April 8 indictment violated the district attorney's earlier promise and is thus invalid under *Santobello.*

Under the state's theory petitioner's successful post-conviction attack on count four of the October 11 indictment, i.e., the prior proceedings that resulted in our *Blakely* decision, would constitute a breach on petitioner's part in that he would no longer be facing the possibility of up to ten years in the penitentiary. Thus, the state's theory continues, it was justified in again bringing one of the charges against petitioner it had previously dismissed as part of the bargain relating to the October 11 indictment.

We conclude that petitioner's theory is the more sound. As the name implies, what is negotiated in plea bargaining is whether a criminal defendant will enter a guilty plea. Because parts of our criminal justice system have come to rely so heavily on guilty pleas, some prosecutors are willing to make concessions to get a guilty plea, such as charge reduction, favorable sentencing recommendation, or, as in this case, dis-

missal of other charges. The exchange is primarily the defendant's guilty plea in return for the prosecutor's concessions.

Of course, the bargain that is made will necessarily have some impact on a defendant's possible sentence in that, if the court accepts his guilty plea(s) to the lesser charge(s) or to some of the charges in a multi-count indictment, then this limits his possible maximum sentence to that provided for the crime(s) to which he has plead guilty. To this extent the state is correct in contending the parties bargain with an eye to these possible maximum consequences.

But the parties also have other considerations in mind while bargaining. A defendant who sees little or no possibility of acquittal may wish to avoid the burdens and expense of trial, or let the correctional process begin immediately—thus presumably ending sooner, or reduce his exposure—a frequent consideration when sex crimes are charged, as in the original October 11 indictment involved in this case. The state also avoids the burdens of trial, thereby conserving prosecutorial resources for those cases in which there is a substantial issue of the defendant's guilt.

> "* * * It is this mutuality of advantage that perhaps explains the fact that at present well over three-fourths of the criminal convictions in this country rest on pleas of guilty, a great many of them no doubt motivated at least in part by the hope or assurance of a lesser penalty than might be imposed if there were a guilty verdict after a trial to judge or jury." *Brady v. United States,* 397 US 742, 752, 90 S Ct 1463, 25 L Ed 2d 747, 758-59 (1970).

While these or other considerations might be in the parties' minds while plea bargaining, and might

even be the motivation that produces agreement, the fact remains that the primary exchange is the defendant's guilty plea in return for the prosecutor's concessions.[2]

It follows that the April 8 indictment under attack in this case was invalid because it violated the terms of the plea bargain made in connection with petitioner's pleas to the October 11 indictment.

In contract cases the victim of a breach frequently has a choice of remedies; he can affirm the contract and seek damages, or disaffirm it and seek to be reinstated to the position he was in before it was consummated. *See, Chester v. McDaniel,* 264 Or 303, 504 P2d 726 (1972). As applied to plea bargaining, "affirming the contract" would, in effect, result in specific performance of the prosecutor's promise that induced the defendant to plead guilty, and "disaffirming the contract" would enable the defendant to withdraw his guilty plea, or pleas, thereby restoring all parties to the *status quo ante.* The Supreme Court in *Santobello* recognized both of these possibilities, and implied that the form of relief to be granted would depend on the circumstances of each case. 404 US at 262.

In this case petitioner seeks to affirm the contract, i.e., claim the benefit of the state's promise not to prosecute him on the charge that was count two of the October 11 indictment. Under the unusual circumstances of this case that is the appropriate relief.

Reversed and remanded.

---

[2] For a more elaborate discussion of the various aspects of plea bargaining, see the authorities cited in Wheeler v. Cupp, 3 Or App 1, 12, 470 P2d 957, Sup Ct *review denied* (1970).