Argued and submitted March 31, reversed and remanded June 4, reconsideration denied July 25, petition for review denied September 16, 1986 (301 Or 765)

# STATE OF OREGON,
*Appellant,*

*v.*

# LEN ALLEN,
*Respondent.*

(85-60CR; CA A36678)

720 P2d 761

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The state appeals the trial court's pretrial order dismissing a murder indictment. We reverse.

Defendant was arrested and charged with several robberies, burglaries and thefts. A plea agreement was negotiated between the prosecutor and defense counsel. In relevant part, it provided:

"Defendant will plead to:

(Robbery I, Theft I), ex con), 84-203CR; (Burg I, Theft I), ex-con) 84-205CR.

"D.A. will dismiss or will not file:

Burg I, Theft I, (Harvest Food); Burg I, Theft I, (Sun Save Auto) ex con; prob. rev. 83-407ACR.

"* * * * *

"[Defendant will] meet w/investigating officers and confess all crimes committed in Klamath County and testify truthfully against any co-defendants and submit to a polygraph regarding truthfulness.

"[D]efendant will receive immunity for all crimes confessed to above except 84-203CR & 84-205CR - in this jurisdiction."

On July 16, 1984, defendant, his attorney and the deputy district attorney appeared in circuit court for entry of a plea. The following colloquy occurred:

"THE COURT: All right. But the only other charges that you are willing to dismiss are burglaries and thefts and ex-con in possession and a probation charge.

"MS. OSBORNE [Prosecutor]: Yes.

"THE COURT: *I don't think it's even an issue. But if he has a potential murder charge against him there is no agreement to that or —*

"MS. OSBORNE: *That's right Your Honor.*

"MR. DELLA-ROSE [Defense Counsel]: No. We might specify what the confession crime is. If they want to exclude certain crimes, we haven't been aware of them. But just more or less he was to meet with investigating officers and I think as a practical matter the record would indicate that the state of the police reports is that he confessed to everything but I —

That is one issue that the court's raised at this point that I really don't know about.

"THE COURT: I think the agreement is that he has to confess all crimes. Is that correct?

"MS. OSBORNE: Yes, your Honor.

"THE COURT: The agreement is any crime except those he is pleading guilty to, he will receive immunity on, that happened in this jurisdiction.

"MS. OSBORNE: That's right.

"MR. DELLA-ROSE: Correct." (Emphasis supplied.)

On August 1, 1984, defendant made statements to the police indicating that he was present at the time and place when Mindy Eaglehorse was killed. On August 3, defendant made another statement to the police, during which he denied any involvement in the Eaglehorse killing.

That same day, a supplemental plea hearing took place in circuit court, during which the following colloquy occurred:

"MR. ISAACSON [Prosecutor]: In that case and the Court previously ordered a presentence report on July 16 of this year, wherein the Defendant pled guilty pursuant to a plea agreement in the case 84-203CR and 84-205CR. I believe the negotiation was filed with the Court, but it was stated on the record, one of the conditions of the negotiation was that the Defendant meet with investigating officers and confess all crimes committed in Klamath County and testify truthfully against any co-defendants and submit to a polygraph regarding the truthfulness. As part of that the Defendant was to receive immunity for the crimes to which he confessed. *During the entry of plea the Court inquired as to whether or made a statement as to whether or not the negotiation included if he confessed to a murder. And it did not include murders.* And Mr. Della-Rose, I think, indicated we did not discuss that. Ms. Osborne said that is correct and the matter proceeded from there without any further clarification. *At this point we would like it very clear on the record that the Defendant, pursuant to plea negotiations does not have immunity for murder.* And Mr. Della-Rose indicated that he wanted that clearly on the record.

"THE COURT: *Do you understand that, sir?*

"THE DEFENDANT: *Yes.*

"THE COURT: And do you understand that that was what the agreement was at the time you entered the sentence?

"THE DEFENDANT: Yes.

"THE COURT: Is there anything else that needs to be stated?

"MR. ISAACSON: Only that murder would include felony murder.

"THE COURT: Felony murder, sir. Do you know what that means? It means that if somebody was committing a felony, for instance as an example, if you were committing a burglary and a person was killed in the course of the burglary, that would be felony murder.

"THE DEFENDANT: Okay.

"THE COURT: Do you understand that?

"THE DEFENDANT: Yeah.

"MR. DELLA-ROSE: Your Honor, I —

"THE COURT: Is that a correct definition?

"MR. ISAACSON: Yes, your Honor.

"MR. DELLA-ROSE: I'd like to make a statement. I did not get an opportunity to see the transcript. I understand there is a transcript of what transpired in the previous change of plea. Insofar as what the terms of that immunity agreement are. At least it appeared from what Mr. Isaacson cited that it was not clear from that change of plea what the precise terms were, the written agreement, itself, does not mention the crime of murder. *I am willing to concede for the record at this time that that was the terms, those were the terms and conditions of the agreement.*

"THE COURT: The issue, though, that I am concerned about at this particular time is that you understand what the conditions are *right now*.

"THE DEFENDANT: *Yes.*" (Emphasis supplied.)

On September 27, defendant was sentenced in accordance with the plea agreement.

On February 1, 1985, defendant was indicted for the murder of Eaglehorse. He filed a motion to dismiss the indictment on the ground that he had been granted immunity for the murder as a result of the plea agreement in his earlier case. At the hearing on his motion, the trial court refused to consider evidence about the intent of the parties to the plea

agreement, apparently on the ground that the parol evidence rule means that a written agreement may not be modified by parol evidence. The court dismissed the murder indictment.

■    Defendant argues that, under principles of contract law, the written plea agreement is a complete integration of the parties' intentions and is unambiguous[1] and, therefore, no extrinsic evidence may be considered to vary its terms. He relies on *Santobello v. New York,* 404 US 257, 92 S Ct 495, 30 L Ed 2d 427 (1971), and *Stewart v. Cupp,* 12 Or App 167, 506 P2d 503 (1973), for the proposition that contract law must be applied in reviewing written plea agreements. Neither case stands for that proposition.

In *Santobello,* the United States Supreme Court held that a defendant's legitimate expectations must be protected:

> "This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is *reasonably due in the circumstances.* Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." 404 US at 262. (Emphasis supplied.)

The Court explained that the remedy for violations of a plea agreement, either enforcing the agreement against the state or permitting the defendant to withdraw his guilty plea, would depend on the circumstances of each case. The Court did use some contract terminology in explaining its holding; however, it did not mandate that contract law be applied in reviewing written plea agreements. The Court stated clearly that a defendant is entitled to receive only the promise actually

---

[1] The written plea agreement in this case is ambiguous. It states that "defendant will receive immunity for all crimes confessed to above * * *." That could mean the crimes described in Item #25 of the agreement, *i.e.,* "all crimes committed in Klamath County." It also could mean the burglaries, thefts, ex-convict in possession of a firearm and violation of probation charges that the state agreed to dismiss or not file in exchange for defendant's agreement to plead to the other charges against him. However, our decision does not turn on the question whether the agreement is ambiguous. Even if it is unambiguous, defendant did not "confess" to the murder of Eaglehorse and, therefore, immunity for murder is not "reasonably due in the circumstances." *Santobello v. New York, supra,* 404 US at 262.

made to him and no more. In this case, the parties all agree that the plea agreement did *not* include immunity for murder.

In *Stewart v. Cupp, supra,* the Supreme Court held that the defendant was entitled to receive the benefit of the bargain that he had made. As in *Santobello,* the *Stewart* court used contract terminology in explaining its holding; however, it also did not mandate that contract law be applied in reviewing written plea agreements. Defendant has cited no authority for the proposition that contract law be applied in reviewing plea agreements, and we have found none.

Even if a plea agreement were a contract, and even if the parol evidence rule applied to it, ORS 41.740, the plea agreement in this case contains no grant of immunity for murder. The only language in it that speaks to immunity provides:

> "Defendant will receive immunity for all crimes *confessed to* above except 84-203 CR & 84-205 CR - in this jurisdiction. (Emphasis supplied.)

At no time did defendant confess to the murder of Eaglehorse. He first told the police that he was present in the general area at the time that Eaglehorse was killed; however, he later denied any involvement in the killing.

■ ■ A "confession" is a voluntary admission or declaration made by a person who has committed a crime, to another, of the agency or participation which that person had in it. *State v. Stevenson,* 98 Or 285, 291, 193 P 1030 (1920). In a legal sense, a "confession" is restricted to an acknowledgment of guilt made by a person after an offense has been committed, and does not apply to a mere statement or declaration of an independent fact from which such guilt may be inferred. *State v. Rinehart,* 26 Or 466, 477-78, 38 P 822 (1895); *see State v. Weston,* 102 Or 102, 113-14, 201 P 1083 (1921). An "admission" is a concession or voluntary acknowledgment made by a party of the existence of certain facts that are relevant to the cause of the adversary. *State v. Weston, supra,* 102 Or at 114; *see OEC 801(4)(b).* The words "confession" and "admission" are not synonymous. "Confession" relates to the acknowledgment of guilt; "admission" relates to the acknowledgment of a fact. *State v. Weston, supra,* 102 Or at 114, quoting *State v.*

*Heidenreich,* 29 Or 381, 382-83, 45 P 755 (1896). *See State v. Howard,* 102 Or 431, 451-52, 203 P 311 (1921).

The plea agreement in this case did not include immunity for the murder of Eaglehorse. Defendant has received what he was promised. He has not been indicted on any of the charges for which he was promised immunity. The trial court erred in dismissing the indictment.

Reversed and remanded.