**Alphonse H. BOGE, Jr., Appellant,**

v.

**STATE of Iowa, Appellee.**

**No. 65338.**

Supreme Court of Iowa.

Aug. 26, 1981.

M. L. Neuhaus of Sprengelmeyer & Henkels, Dubuque, for appellant.

Thomas J. Miller, Atty. Gen., and John P. Messina, Asst. Atty. Gen., for appellee.

---

Considered by REYNOLDSON, C. J., and UHLENHOPP, McGIVERIN, LARSON and SCHULTZ, JJ.

LARSON, Justice.

Alphonse H. Boge, Jr., and the State struck a plea bargain by which Boge agreed to plead guilty to attempted murder, § 707.-11, The Code 1979, and the State agreed to dismiss other charges then pending against him. The district court, after making a record as to terms of the agreement, accepted the guilty plea and sentenced Boge to the reformatory. In this postconviction case Boge now claims the State failed to abide by its agreement: that it promised him more than it could legally deliver, and that his plea of guilty, induced by those promises, was therefore invalid. He also contends his "purpose" in entering into the plea agreement was to avoid the mandatory three-year minimum sentence provided for by the habitual criminal statute, § 902.8, The Code, and that purpose was frustrated by section 906.5, which prevents the parole board from granting a parole to a prisoner with a prior conviction of a forcible felony until he has served at least one-half of his current sentence. In Boge's case, this would mean a minimum of five years. The State successfully moved for summary disposition under section 663A.6, The Code 1979, on the ground that the postconviction application generated no genuine issue of material fact. We affirm.

*I. Breach of plea agreement.* Boge contends that the plea agreement contemplated he would serve his entire sentence at the men's reformatory at Anamosa and it was breached because he was transferred to the prison at Fort Madison shortly after he arrived at Anamosa. The assertion, however, that his continued stay at Anamosa was "assured by the State and the court" is not supported by the record.

At the guilty plea proceeding, the terms of the plea agreement were explained:

MR. GOEN [defense counsel]: And further it's agreed that the State would write a recommendation to the Board of Adult Corrections recommending that Mr. Boge be allowed to serve his sentence at Anamosa at the Iowa Men's Reformatory, and that the court order—the State would recommend that the court order would place Anamosa as the initial place of confinement.

MR. SCHILLING [for the State]: Yes, Your Honor, we agree to that. And in regard to this letter, off the record we have discussed in the presence of Mr. Boge's attorney with Mr. Boge the limitations of whether or not the Board of Corrections is going to give any credence to a letter, or any weight to it, but we will agree to write that letter recommending that the place of confinement be Anamosa. The other terms and conditions that have been mentioned by Mr. Goen are correct as well.

THE COURT: The Court will make the disposition then to the Men's Reformatory in Anamosa, Iowa.

At sentencing the agreement was further discussed:

MR. GOEN: Your Honor, I talked today to the warden at the Men's Reformatory at Anamosa and he remembers Al from prior visits and that he was willing to accept him at that institution. He said he couldn't guarantee that he would spend the entire sentence—that was because of population factors—but they would take him and he told me it's worth taking the chance to send him there now.

THE COURT: At the time of discharge, or if it should be a factor, I would be glad to write a letter.

\*  \*  \*  \*  \*  \*

THE COURT: And the Court will make sentencing under Code section 902.-9(3), Class C Felony will be prison for not more than ten years in a place of confinement to be at Anamosa, Iowa Men's Reformatory under the direction of the Director of Services. And that's a place that the Court is recommending that you be confined, Mr. Boge.

The agreement as to the place of incarceration was that the State would write a letter to the department of adult corrections recommending that Boge be allowed to serve

his sentence at Anamosa and that it would recommend to the district court that it designate Anamosa as the initial place of confinement, § 901.7, The Code. There was no promise that Boge would serve out his entire sentence at Anamosa. In fact, the record, quoted above, shows a specific disclaimer of any such agreement: it was made clear, both at the time of the plea and at the sentencing, that there were serious doubts as to the effectiveness of a recommendation by the State as to the ultimate place of confinement. A letter from the county attorney's office recommending Boge's incarceration at Anamosa, in accordance with the agreement, was received in evidence.

■ Despite the lack of objective evidence to support his claim that there was such a promise he could serve his entire sentence at Anamosa, Boge claims that such was his understanding and this is at least enough to generate a fact issue, thereby precluding summary disposition under section 663A.6. We have said that the principles underlying our summary judgment procedure, Iowa R.Civ.P. 237–240, also apply to summary dispositions under the postconviction procedures of chapter 663A. *Hines v. State*, 288 N.W.2d 344, 346 (Iowa 1980); *State v. Mulqueen*, 188 N.W.2d 360, 368 (Iowa 1971). Our postconviction procedure, like rule 237, thus allows summary disposition when it appears from the pleadings and evidence that "there is no genuine issue of material fact." § 663A.6, The Code. Whether a genuine issue of material fact exists, so as to preclude summary disposition, turns on whether reasonable minds could draw different inferences and reach different conclusions from them. *Daboll v. Hoden*, 222 N.W.2d 727, 733 (Iowa 1974).

■ We conclude no reasonable minds could differ as to the terms of the agreement or the State's compliance with them, insofar as they pertained to the site of Boge's incarceration. The actual terms of the plea agreement, set out above, are undisputed; Boge's after-expressed assertion that he read into it a promise to secure his permanent placement in Anamosa is insuf-

ficient to generate a genuine issue of fact. This determination was properly made as a matter of law by the court, notwithstanding Boge's present assertions that his intent was something else. In discussing the suitability of summary disposition of state-of-mind issues in the analogous area of contracts, one authority has stated that

[a]lthough summary judgment will be refused if the ... agreement ... is ambiguous, the preliminary question of whether an ambiguity does exist is a question of law that may be resolved summarily by the court. Thus, when there is no genuine issue as to the meaning of a contract, the mere assertion that ambiguity or *divergent intent* exists will not prevent the grant of the motion [for summary judgment].

10 C. Wright and A. Miller, *Federal Practice and Procedure* § 2730, at 585–87 (1973) (emphasis added).

Boge also complains that "[n]ot only was the bargain not kept by the State, it could not be kept as the State did not have the authority to enter into a promise that could not be kept by it." He cites section 902.5, The Code, which places authority for prisoner placement in the Director of the Division of Adult Corrections. We have already rejected the postulate for this argument, that such a promise was in fact made; it is therefore not necessary to decide what effect section 902.5 might have.

*II. The "minimum" sentence.* Section 906.5, The Code, provides that if a prisoner has a criminal record which includes a forcible felony, parole will be denied until he has served at least one-half of the maximum sentence. In Boge's case, the maximum sentence for attempted murder is ten years, §§ 707.11, 902.9(3), The Code. Because of his prior forcible felony record, Boge would not be eligible for parole until he had served five years. Boge claims he was not advised that because of section 906.5 he would, in effect, be subject to a five-year minimum sentence, and he would not have agreed to the plea bargain had he been aware of this fact. However, Iowa Rule of Criminal Procedure 8(2)(b)(2) merely re-

quires that the defendant be informed of any mandatory minimum punishment "provided by the statute defining the offense, to which the plea is offered." No minimum sentence is prescribed in the attempted murder statute, § 707.11, The Code; rule 8(2)(b)(2) is therefore inapplicable by its terms. In fact, the problem facing Boge now is not one of minimum *sentence* at all, but rather a limitation on the power of the parole board to grant him a parole.

Boge contends he agreed to plead guilty to the charge of attempted murder to avoid a possible mandatory minimum sentence of three years as an habitual criminal and was chagrined to learn he had in effect bargained for a five-year minimum sentence instead, without warning from his attorney, the prosecuting attorney, or the district court. He does not claim on appeal that he was misled by the prosecuting attorney or the court, and the allegation in his postconviction petition that "he was promised that he would have no mandatory minimum sentence to serve" is not supported by the evidence. On appeal he merely contends that the district court erred in not informing him of his limited eligibility.

We have recently held that, on a guilty plea to first degree murder, a court is not required to advise the defendant that he is ineligible for parole. *Fryer v. Scurr*, 309 N.W.2d 441, 444 (Iowa 1981). That case is controlling here. Moreover, there is no evidence that he was lured into a guilty plea by any misrepresentations as to his parole eligibility; in fact, he stated at various times on the record at sentencing that "more than likely I will do all my time," that "I'll be real honest; I don't think there is no chance for a parole," and that "the parole board has said that if I ever come back, [I] will do all of [my] time."

■ Summary disposition of this issue by the district court was proper because, for the reasons enumerated in *Fryer v. Scurr*, the court was not required to inform Boge of the parole restrictions applicable to him. There was no genuine issue of fact as to any claim of improper inducement to plead guilty based on any representations of parole eligibility.

■ *III. Record of proceedings.* At the guilty-plea proceeding there was a discussion off the record concerning where Boge would be sent. The State informed the court of that discussion, as a part of the guilty-plea record, as follows: "[I]n regard to this letter [to the division of adult corrections], off the record, we have discussed in the presence of Mr. Boge's attorney *with Mr. Boge* the limitations of whether or not the Board of Corrections is going to give any credence to a letter . . . ." (Emphasis added.) This statement indicates the limited scope of the discussion and that it was held in the presence of Boge as well as his attorney. Nevertheless, Boge contends it was a violation of Iowa Rule of Criminal Procedure 8(3), which requires that "[a] verbatim record of the proceedings at which the defendant enters a plea shall be made." We do not consider this discussion, which preceded the guilty plea itself, to be a part of the "proceedings" to which rule 8(3) applies. Boge's view that the rule requires a record of "all of the discussions, implications, and limitations that were made or promised" is not supported by the language of the rule or of the cases which preceded it. Furthermore, the discussion in question cannot be considered to have been an inducement to the plea of guilty because it merely expressed to Boge the doubts of the attorneys as to the effectiveness of the letters recommending incarceration at Anamosa. It would, in fact, tend to discourage a plea of guilty, not induce it.

We cannot accept Boge's argument that a genuine issue of fact is raised on this question so as to require a plenary hearing. Rule 8(3) does not require preliminary discussions to be recorded and in any event a later record was made at the guilty-plea proceeding which incorporated the off-the-record discussion. Rule 8(3) was therefore substantially, if not literally, complied with.

We find no reversible error.

AFFIRMED.