STATE

v.

**Latrall MALONE.**

No. 88–168–C.A.

Supreme Court of Rhode Island.

Jan. 8, 1990.

James E. O'Neil, Atty. Gen., Caroline Cole Cornwell, Sp. Asst. Atty Gen., Annie Goldberg, Asst. Atty. Gen., for the State.

John P. O'Connor, Providence, for Latrall Malone.

OPINION

MURRAY, Justice.

This case is before the court on the defendant's appeal from his conviction in Kent County Superior Court of robbery, conspiracy, and four counts of assault with a dangerous weapon. The defendant alleg-

es as error on the record the denial by the trial justice of the defendant's motion for specific performance of the plea bargain agreement between the state and the defendant, as well as the denial of the defendant's motion to suppress the defendant's prior statements. The defendant also faults the trial justice in his refusal to allow one Caroline Mangum to testify for the defendant and claims prejudice as a result of this ruling. Accordingly, we advert to a brief precis of the factual situation in order to discuss these issues in depth.

On September 13, 1984, a Rhode Island grand jury returned an indictment against defendant Latrall Malone (Malone), for his participation in the October 12, 1983 robbery of a Warwick company called Hallmark Findings. The indictment charged Malone with robbery, conspiracy to rob, and multiple counts of assault with a dangerous weapon. Seven codefendants were also named in the indictment. The defendant's case was severed from the others on September 18, 1986, upon the court's granting of the state's motion to sever. The defendant's jury trial was held June 1 to 15, 1987.

The defendant had signed a statement after his arrest that was admitted as a full exhibit and read into the record at trial. This statement contained information about defendant's and the codefendants' participation in the Hallmark Findings robbery. In this statement defendant characterized his role as that of "the lookout man" with no active participation in the robbery; however, in a subsequent statement made to the police defendant admitted to taking a more active part.

The Hallmark Findings robbery went unsolved for almost a year, until defendant was arrested by the Providence police for different crimes. While defendant was being held at the Adult Correctional Institutions (ACI), he requested his attorney to set up a plea bargain in return for information about some unsolved crimes, including the Hallmark Findings robbery.

In July 1984, a bargain was reached between defendant and the state. The state agreed that it would recommend a sentence of twenty-five years with fifteen years suspended, fifteen years of probation, and ten years to serve. Also the state agreed to provide protection for defendant, his girlfriend, and their son. In return, defendant agreed to testify truthfully against his codefendants. Before his own case came to trial, he had testified before the grand jury and at several of his codefendants' bail hearings and at their trials.

On November 23, 1984, at the second trial of codefendant Luis Estrada (Estrada), Malone pleaded the Fifth Amendment. As a result the state withdrew its deal with defendant. The trial justice ruled that defendant's testimony from the first trial of codefendant Estrada could be read into evidence at the second trial. After this ruling defendant reconsidered and claimed he was ready to testify.

Subsequently defendant testified at Estrada's hearing on a motion for a new trial. At this hearing defendant recanted all the testimony he had given at both of Estrada's prior trials. No further agreement was reached with the state, and defendant went on trial from June 1, 1987, to June 15, 1987. On June 13, 1987, defendant was found guilty of robbery, conspiracy, and four counts of assault with a dangerous weapon. On August 21, 1987, defendant was sentenced to forty years at the ACI with thirty years to serve, ten years suspended, and ten years of probation.

We shall address each issue individually.

## I

## SPECIFIC PERFORMANCE OF THE PLEA BARGAIN

Plea bargains are agreements between the state and a criminal defendant in which the defendant pleads guilty or nolo contendere in exchange for the prosecutor's recommendation of a reduced sentence to the judge. Each party to the agreement benefits. The state benefits by saving the state court time and money and sometimes, as in this case, by obtaining valuable evidence against codefendants. The criminal defendant benefits by receiving a more lenient

sentence than if he were sentenced following a trial and conviction. "The disposition of criminal charges by agreement between the prosecutor and the accused has become an essential part of the administration of criminal justice and is highly desirable * * *." *State v. Freeman*, 115 R.I. 523, 531, 351 A.2d 824, 828 (1976); *see Brady v. United States*, 397 U.S. 742, 751–52, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747, 758–59 (1970).

In this case a valid plea agreement was reached. The state agreed to recommend a sentence of twenty-five years with fifteen years suspended, fifteen years probation, and ten years to serve, as well as to provide protection for defendant, his girlfriend, and their son. The state made this agreement contingent upon defendant's testifying truthfully against his codefendants. The defendant asserts that the state breached this plea agreement by failing properly to protect his girlfriend and his son and that, therefore, he is entitled to have the specific terms of the agreement enforced by this court. The defendant claims that his refusal to testify occurred after the state had already breached the agreement.

■ In denying defendant's motion for specific performance, the trial justice found that there was a plea agreement between the state and defendant. This agreement was breached by defendant when he refused to testify at Estrada's second trial and when he recanted his prior testimony at Estrada's hearing on a motion for a new trial. Further, he found that the protection of defendant's family was not a major concern of defendant. Also the court noted that neither Caroline Mangum nor the defendant objected to the protection given to Ms. Mangum and her son prior to defendant's breach of the agreement.

Specific performance is an equitable remedy of the court.

"The grant of [specific performance] is not a matter of right, but rests in the sound discretion of the trial justice. It is well established that the party who wishes to avail himself of the unique remedy of specific performance must

show that he was ready, able and willing to perform his part of the contract." *Jakober v. E.M. Loew's Capitol Theatre, Inc.*, 107 R.I. 104, 114, 265 A.2d 429, 435 (1970).

"[This court] shall not disturb a decision of a trial justice made in the exercise of a discretionary power unless it clearly appears that such discretion has been abused or improperly exercised." *State v. Babbitt*, 457 A.2d 1049, 1052 (R.I.1983). Further, a trial justice may refuse to grant specific performance "if a substantial part of the agreed exchange for the performance to be compelled is unperformed and its performance is not secured to the satisfaction of the court." *Restatement (Second) Contracts* § 363 (1981).

The trial justice acted well within his discretion in denying defendant's motion for specific performance of the plea bargain. The defendant's actions indicated that he was unwilling to perform his part of the agreement. Malone was to testify truthfully against his codefendants. He breached his agreement with the state. At Estrada's second trial Malone refused to testify, knowing that his agreement with the state was contingent upon his truthful testimony.

Other evidence of defendant's failure to testify truthfully includes his inconsistent statements at hearings and trials and his attempt to recant his prior statements at Estrada's hearing on a motion for a new trial. These actions further indicate defendant's unwillingness to perform his part of the agreement, thereby breaching his agreement with the state.

The facts of this case are similar to the facts in a 1987 decision of the United States Supreme Court called *Ricketts v. Adamson*, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987). In *Adamson* the defendant entered into a plea agreement with the state to testify against his codefendants. After the codefendants' convictions the defendant was sentenced in accordance with the plea agreement. The codefendants' convictions were subsequently reversed by the Arizona Supreme Court and remanded for retrial. At the codefendants'

retrial the defendant refused to testify, claiming that his obligations under the plea agreement terminated when he was sentenced.

The Supreme Court held that the subsequent vacated second-degree murder conviction and the reinstatement of the original charges by the state did not violate the double jeopardy clause because the defendant had breached the plea agreement. The Court found that the defendant understood the terms of the plea agreement and the consequences if he were found to be in breach of the agreement. *Id.* at 11–12, 107 S.Ct. at 2687, 97 L.Ed.2d at 12–13. The Court reasoned that "[t]he State did not force the breach; respondent chose, perhaps for strategic reasons or as a gamble, to advance an interpretation of the agreement that proved erroneous. And, there is no indication that respondent did not fully understand the potential seriousness of the position he adopted." *Id.* at 11, 107 S.Ct. at 2686, 97 L.Ed.2d at 13.

Although a double jeopardy violation is not raised on this appeal, the Supreme Court's discussion of Adamson's breach of the plea agreement is analogous to the pending matter. In this case the record indicates that Malone understood the terms of the plea agreement and the consequences if he were found to be in breach of the agreement. It was Malone's choice to breach the agreement with the state.

■ The defendant also contends that his Fifth Amendment rights were violated by the state's withdrawal because all his previous self-incriminating statements were used to convict him at trial.

The bargain between the state and Malone was a contingent plea agreement. The state's sentence recommendation was contingent upon defendant's truthful testimony against his codefendants. The state may call off the bargain if a defendant breaches the agreement. Malone's Fifth Amendment rights were not violated. As a witness and a defendant, Malone was warned of the possible consequences of his testifying. Prior to entering a plea, Malone's rights remained intact and were not violated when the bargain was revoked in

response to his actions. The defendant was repeatedly informed of his *Miranda* rights prior to his giving any incriminating statements. Also Malone was fully represented by counsel at the time of his statements. The record contains no evidence that the state falsely induced Malone's statements although the record does indicate that Malone attempted to use his testimony to manipulate the state into giving him a sweeter deal than that to which he had agreed.

## II

### SUPPRESSION OF PRIOR STATEMENTS

■ The defendant argues that the state's use of his self-inculpatory prior statements during his trial violated his Fifth and Fourteenth Amendment rights under the United States Constitution and his art. I, sec. 13, rights under the Rhode Island Constitution. The defendant claims that he was willing to testify only in reliance on the promises made to him by the state and that once the bargain was revoked, the statements should have been ruled inadmissible as having been obtained involuntarily by improper influences.

Admissions of a defendant must be voluntary in order to be admissible against him or her at trial. "[T]he state must show by clear and convincing evidence that the admissions were the product of a free and rational choice and not the result of coercion of any type." *State v. Crowhurst,* 470 A.2d 1138, 1142 (R.I.1984).

In determining whether an inducement of a recommendation of a reduced sentence by the state makes an admission involuntary, we look to the leading case in this jurisdiction on voluntariness. In *State v. Pacheco,* 481 A.2d 1009 (R.I.1984), the state promised the defendant that the charges against his companion would be dismissed and that he would receive a recommendation that his prison term be in an out-of-state facility. Applying a totality of circumstances test, we found the defendant's subsequent incriminating statements voluntary. *Id.* at 1027.

"The repeated admonitions of the right to remain silent and the right to counsel, as well as Pacheco's responses to such admonitions and his assertions concerning his understanding thereof to the police, were more than enough to dispel any inferences of * * * subtle, coercive pressures * * *." *Id.* at 1026–27.

Similarly, in this case Malone was repeatedly read his *Miranda* rights, and he signed the rights form. Also he was represented by counsel when giving his statements. There were no subtle or coercive pressures placed on defendant. The defendant initiated an interest to bargain with the state. The defendant accepted the terms of the agreement with the state and later breached those terms. The defendant knew that he was to testify truthfully against his codefendants. He knew that the state's sentence recommendation was contingent on his fulfillment of the terms of the agreement.

Admissions made pursuant to a good-faith contingent plea agreement, as in the instant case, are voluntary when the defendant is fully informed of his rights prior to his testifying, when there exists no evidence that the state falsely induced the statements, and when the defendant makes a free and rational choice to speak. A defendant takes the risk that statements will be used against him or her in the event that he or she later breaches the agreement. The trial judge correctly denied defendant's motion to suppress defendant's statements.

### III

### DENIAL OF WITNESS' TESTIMONY

■ The defendant argues that the trial judge denied his right to due process by refusing to allow his girlfriend, Caroline Mangum, to testify before the jury. He asserts that his Sixth Amendment right to present defense witnesses was denied. The defendant contends that Ms. Mangum had material evidence on the exact terms of the plea agreement and on the voluntariness of his prior statements.

The Sixth Amendment to the United States Constitution allows criminal defendants to offer testimony of witnesses on their behalf. *See State v. Counts,* 452 A.2d 1141, 1143 (R.I.1982). We have held that there is no constitutional right to introduce irrelevant, immaterial, or prejudicial evidence and no constitutional right to introduce hearsay evidence even if it is relevant. *Advisory Opinion to the House of Representatives,* 469 A.2d 1161, 1165 (R.I. 1983).

The defendant argues that the testimony of Ms. Mangum related to his plea agreement and the voluntariness of his statements. Neither of these topics was relevant or material to the jury's determination of defendant's guilt or innocence of the crimes charged. The record indicates that there was no issue of the existence of or the terms of the plea agreement. Further, the issue of the voluntariness of defendant's prior statements had been fully heard and decided at a pretrial motion. A rehearing of the same issue in front of the jury would be inappropriate, misleading, and redundant.

"[Q]uestions as to the character of the evidence offered, and the manner and extent of its presentation, are largely within the discretion of the Trial Court, and the exercise of that discretion will not be interfered with unless there has been an abuse to the prejudice of the defendant * * *." *State v. Bowden,* 113 R.I. 649, 660, 324 A.2d 631, 638 (1974) (quoting *State v. Reardon,* 101 R.I. 18, 25, 219 A.2d 767, 771–72 (1966)).

The record indicates that Ms. Mangum's testimony did not substantively impeach the defendant's statements or offer any additional relevant information from her personal knowledge that would make the denial of her testimony prejudicial to the defendant. Ms. Mangum's testimony was based on hearsay statements related to her by Malone and the police. The trial judge properly excluded her hearsay and cumulative testimony from consideration by the jury.

Upon a review of the issues raised by the defendant on appeal and our analysis there-

of, we conclude that in the instant case the issues are without merit. Hence the defendant's appeal is denied and dismissed, and the judgment of the Superior Court is affirmed.