Argued and submitted March 6, the judgment of the Douglas County Circuit Court vacated and the case remanded to that court with instructions June 21, 1990

# STATE OF OREGON,
*Respondent,*

*v.*

# MICHAEL MARTIN McDONNELL,
*Appellant.*

## (TC J85-0004; SC S35117)

794 P2d 780

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for appellant. With her on the briefs were Sally L. Avera, Acting Public Defender, and Stephen J. Williams, Deputy Public Defender, Salem.

Brenda J Peterson, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Peterson, Chief Justice, and Carson, Jones,* Gillette, Van Hoomissen, Fadeley and Unis, Justices.

UNIS, J.

Fadeley, J., concurred in part and dissented in part and filed an opinion.

---

* Jones, J., resigned April 30, 1990.

## UNIS, J.

This is an automatic and direct review of a judgment of conviction of aggravated murder and sentence of death. ORS 163.150(1)(g). Defendant seeks to have this court vacate the judgment and remand this case to the trial court with instructions to enter defendant's plea of guilty to the crime of aggravated murder and impose a sentence of life imprisonment. We vacate the judgment and remand this case to the trial court with instructions.

Defendant was charged with the aggravated murder of Joey Deah Bouwsema Keever, whose death resulted from multiple knife wounds. Prior to trial, the Douglas County District Attorney informed defendant that he was willing to enter into a plea agreement with defendant if the victim's parents agreed. Under the proposed plea agreement, defendant would plead guilty to aggravated murder and the district attorney would not present any evidence to the jury to support a sentence of death during the penalty phase of the trial. As a consequence, defendant would receive a life sentence. *See* ORS 163.150 (*amended by* Or Laws 1989, ch 720, § 2).[1] The proposed plea agreement was acceptable to defendant. It was not, however, acceptable to the victim's parents. The district attorney, therefore, decided to proceed to trial and seek a death penalty.

Defendant then moved the trial court for an order requiring the district attorney to enter into the plea agreement. In support of his motion, defendant relied upon the following stipulation:

---

[1] As of the date of the judgment, September 30, 1988, ORS 163.150 provided in part:

"(2) When the defendant is found guilty of aggravated murder upon a plea of guilty or no contest prior to the introduction of evidence before the trier of fact and the state advises the court on the record that the state declines to present evidence for purposes of sentencing, the court shall not conduct a sentencing proceeding as described in subsection (1) of this section, but the court shall sentence the defendant to life imprisonment as prescribed by ORS 163.150."

The statute was amended by the 1989 legislature and today provides in part:

"(3)(a) When the defendant is found guilty of aggravated murder upon a plea of guilty or no contest prior to the introduction of evidence before the trier of fact, and the state advises the court on the record that the state declines to present evidence for purposes of sentencing the defendant to death, the court:

"(A) Shall not conduct a sentencing proceeding as described in subsection (1) of this section, and a sentence of death shall not be ordered."

"[The] District Attorney for Douglas County [ ] has stated to both attorneys representing [defendant] that, if the parents of the alleged victim would agree to such a resolution of this case, he would accept a plea to the offense of aggravated murder and would decline to present any evidence to the jury during the penalty phase of the trial which would result in a life sentence for [defendant]. To date, the parents of the alleged victim have not agreed to such a resolution of this case.

"[Defendant] would agree to such a resolution of this case."

No other evidence was received by the trial court regarding the district attorney's decision to enter into the plea agreement. In fact, the defendant objected to the trial court considering any evidence other than the parties' stipulation in ruling on the motion. As a result, the record does not reveal what, if any, plea agreement the district attorney would have approved had he not conditioned his acceptance on the victim's parents' concurrence in the plea agreement. The trial court denied defendant's motion. A jury trial followed. Defendant was found guilty of aggravated murder and was sentenced to death.

Although defendant initially challenged his conviction and death sentence on numerous assignments of error, the parties agreed to limit the appeal at this stage to examining whether the district attorney based his decision not to enter into the plea agreement on improper considerations and, if so, determining what is the proper remedy for such an erroneous decision.

Defendant argues that the district attorney should be directed to accept the plea agreement because the district attorney had deferred to the wishes of the murdered victim's parents in deciding either to accept a guilty plea in exchange for a life sentence or try the case and seek a penalty of death. Defendant claims that the district attorney abdicated his role prescribed in ORS 135.405, which provides that only the district attorney may engage in plea discussions. Defendant further contends that, by delegating the decision to enter into the plea agreement to the victim's parents, the district attorney violated (1) Article I, section 20,[2] of the Oregon Constitution

---

[2] Article I, section 20, of the Oregon Constitution provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

because the decision turned on a haphazard criterion; (2) Article I, section 16,[3] of the Oregon Constitution because the victim's parents' desires necessarily injected vindictiveness into the decision; (3) the Eighth Amendment to the United States Constitution[4] because the district attorney's action inappropriately caused defendant's fate to turn on victim-related factors, rather than on an assessment of the nature of defendant's crime and his culpability; and (4) the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[5]

The state concedes that the district attorney cannot let victims or their families play the decisive role in plea negotiations by deferring to their judgment whether a plea agreement is appropriate. The state further concedes that the district attorney's refusal to enter into the proposed plea agreement unless he had the victim's parents' concurrence was error. The state based its concession, however, under the statutes that govern a district attorney's authority to enter into a plea agreement, rather than under any constitutional provision.[6]

The statutes that presently govern a district attorney's authority to enter into a plea agreement were enacted in 1973. That year, the Oregon Legislature adopted the American Bar Association's recommendation to formally organize

---

[3] Article I, section 16, of the Oregon Constitution provides:

"Excessive bail shall not be required, nor excessive fines imposed. Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense. In all criminal cases whatever, the jury shall have the right to determine the law, and the facts under the direction of the Court as to the law, and the right of new trial, as in civil cases."

[4] The Eighth Amendment to the United States Constitution provides:

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[5] The Fourteenth Amendment to the United States Constitution provides:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of laws."

[6] Before reaching state and federal constitutional claims, this court first examines whether the challenged act violates or fails to conform to any applicable state statute. *See Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 564, 687 P2d 785 (1984); *see also State v. Hitz*, 307 Or 183, 188 n 1, 766 P2d 373 (1988), and cases cited therein.

and control the plea negotiation process. Commentary, Proposed Oregon Criminal Procedure Code (1972), § 263, p. 158 (hereinafter Commentary). As the legislative history reflects, the legislature understood that negotiated guilty pleas were disfavored and criticized by the public because of the perception that they resulted in overly lenient dispositions which failed to adequately protect the public's interests. Nevertheless, the legislature concluded that plea negotiation is an essential component of an efficient and effective justice system, and that, if properly administered, negotiated pleas should be encouraged. *Id.,* § 263, pp. 158-59 and § 264, pp. 160-61; *see also* Commentary to ABA Standards Relating to Pleas of Guilty, Standard 3.1 (1968). The legislature therefore enacted general standards controlling the circumstances under which a district attorney could negotiate a plea together with procedures designed to make plea negotiations open to public scrutiny. Commentary, § 263, pp. 158-59, and § 264, pp. 160-61.

Two statutes thus adopted are relevant to this case. The first is ORS 135.405, which provides in part:

> "(1)   In cases in which it appears that the interest of the public in the effective administration of criminal justice would thereby be served, and in accordance with the criteria set forth in ORS 135.415, *the district attorney* may engage in plea discussions for the purpose of reaching a plea agreement." (Emphasis added.)

Subsection (3) identifies an open-ended list of the kinds of concessions the district attorney may offer in exchange for a guilty plea. Subsection (4) provides that "[s]imilarly situated defendants should be afforded equal plea agreement opportunities."

The second relevant statute is ORS 135.415, which provides a *nonexclusive* list of criteria the district attorney may take into account in making plea agreements. *See State v. Buchholz,* 309 Or 442, 788 P2d 998 (1990). ORS 135.415 provides:

> "In determining whether to engage in plea discussions for the purpose of reaching a plea agreement, *the district attorney* may take into account, but is not limited to, any of the following considerations:

> "(1)   The defendant by the plea of the defendant has

aided in ensuring the prompt and certain applications of correctional measures to the defendant.

"(2)  The defendant has acknowledged guilt and shown a willingness to assume responsibility for the conduct of the defendant.

"(3)  The concessions made by the state will make possible alternative correctional measures which are better adapted to achieving rehabilitative, protective, deterrent or other purposes of correctional treatment, or will prevent undue harm to the defendant from the form of conviction.

"(4)  The defendant has made public trial unnecessary when there are good reasons for not having the case dealt with in a public trial.

"(5)  The defendant has given or offered cooperation when the cooperation has resulted or may result in the successful prosecution of other offenders engaged in equally serious or more serious criminal conduct.

"(6)  The defendant by the plea of the defendant has aided in avoiding delay in the disposition of other cases and thereby has increased the probability of prompt and certain application of correctional measures to other offenders." (Emphasis added.)

Both ORS 135.405 and ORS 135.415 place the authority for negotiating a plea agreement on the district attorney.

■     The state characterizes the error which it concedes occurred in this case as having been caused by the district attorney impermissibly delegating the decision to enter into a plea agreement to the victim's parents. The state is correct that, based on the limited record before us, the district attorney improperly delegated the decision whether to enter into plea negotiations to the victim's parents. Unfortunately, the record is too limited to permit us to determine the extent of that delegation.

As noted previously, the only evidence in this case concerning the proposed plea agreement consisted of the stipulation of the parties. Defendant objected to the trial court considering any evidence other than the parties' stipulation in ruling on his motion to require the district attorney to enter into the plea agreement. The stipulation of the parties only states that "if the parents of the alleged victim would agree to such a resolution of this case, [the district attorney] would accept a plea to the offense of aggravated murder and would

decline to present any evidence to the jury during the penalty phase of the trial." The record does not show what other considerations, if any, the district attorney used in assessing the proposed plea agreement. The stipulation does not indicate, for example, whether the district attorney decided to enter into the plea agreement based on appropriate criteria but conditioned his acceptance on the victim's parents' concurrence or if the district attorney entirely delegated that decision to the victim's parents.

Only one fact is clear: the victim's parents' wishes were the controlling factor in the district attorney's decision. Under the applicable statutes that govern a district attorney's authority to enter into a plea agreement, as discussed above, that was error. If a district attorney decides to engage in plea negotiations, he or she must be guided by the statutory criteria and other relevant considerations involving the public's interest in an effective administration of criminal justice. The district attorney cannot delegate to others this responsibility for carrying out public policy.

This is not to say that crime victims and their families have no part in plea agreements. They potentially play an important role in the plea negotiation process. District attorneys legitimately may consult with them. *Cf. In re Collins,* 308 Or 66, 73 n 12, 775 P2d 312 (1989). The victim's financial interests are at stake with respect to any agreement a prosecutor may consider regarding restitution. Victims are important sources of information about the circumstances of the offense, and sometimes about the accused as well. *See generally* Welling, *Victim Participation in Plea Bargains,* 65 Wash ULQ 301 (1987); Gifford, *Meaningful Reform of Plea Bargaining: The Control of Prosecutorial Discretion,* 1983 U Ill L Rev 37, 90. That is equally true in murder cases, where a victim's family may be able to provide information or insights about the victim or the defendant which assist in the district attorney's understanding of the crime (*i.e.,* aggravating or mitigating circumstances) or are in other ways relevant to the decision whether to negotiate a plea.[7]

---

[7] The American Bar Association in 1980 recommended that the "prosecuting attorney should make every effort to remain advised of the attitudes and sentiments of victims and law enforcement officials before reaching a plea agreement." As the ABA

It is one thing, however, for a district attorney to consult with a victim or a victim's family for purposes of gaining information that may bear on factors relevant to an assessment of whether a plea agreement will serve the public's interest in "the effective administration of criminal justice." ORS 135.405(1). It is another to permit the victims or their families to control the plea agreement decision.

Given our conclusion that, based on the limited record in this case, the district attorney committed error, we next address the appropriate remedy. Defendant contends that the district attorney should be directed to accept the plea agreement.

Where a district attorney's exercise of judgment or discretion not to enter into a plea agreement is set aside because it rested wholly on improper considerations, the remedy is for the district attorney to make a new decision based solely on proper criteria and upon the facts that existed when the plea agreement was contemplated. This result follows unless the record demonstrates what that decision would be. Here, as indicated above, the record in this case does not establish what the then district attorney's independent decision was or would have been. We, therefore, vacate the judgment and remand the case to the trial court for an evidentiary hearing to determine how the prosecutor would have exercised his judgment and discretion on the basis of proper criteria and the facts that existed at the time he declined to enter into the plea agreement. If, after hearing the evidence, the trial court finds that the district attorney would have reached the same

---

commentary explains:

"The victim is all too often the forgotten person in the plea negotiation process. In some jurisdictions, the victim may not even be informed of the disposition of the case which was based upon the violation of his or her rights as a citizen. Victims who are shut out of the disposition process in this manner may develop a cynical attitude toward the criminal justice system and may become reluctant to cooperate with law enforcement officers in the future. In order to prevent these feelings, it is important that the prosecutor make every effort to contact the victim to listen to the victim's views, and to explain the plea negotiation process to the victim.

"* * * * *

"Of course, the prosecutor is not bound to act in accordance with the suggestions or feelings of victims * * *. The duty of the prosecutor is to act in the best interests of society at large, and numerous factors normally must be considered in addition to the views of victims * * *."

decision to proceed with the prosecution of the accused on proper grounds, then the judgment of conviction and sentence of death shall be reinstated and an appeal therefrom may proceed. If, however, the trial court finds that the prosecutor would have accepted the negotiated plea, then, as the state concedes, the defendant shall be permitted to enter a plea of guilty to the crime of aggravated murder and the trial court shall sentence him to life imprisonment. *See* ORS 163.150 (*amended by* Or Laws 1989, ch 720, § 2).[8] If after an evidentiary hearing defendant is permitted by the trial court to enter a plea of guilty to the crime of aggravated murder and does not do so, the judgment should be reinstated and an appeal therefrom may proceed.

The judgment of the Douglas County Circuit Court is vacated, and the case is remanded to that court with instructions.

**FADELEY, J.**, concurring in part and dissenting in part.

In 1984, defendant was indicted for the aggravated murder of Joey Keever. Before trial in 1988, defendant sought to enforce an agreement of the district attorney to accept a plea of guilty to that charge. A written stipulation in support of the motion to compel performance provided that the state "would accept a plea * * * and decline to present any evidence" on sentencing "if the parents of the alleged victim would agree to such a resolution of this case." The parents did not agree. Without explanation, the trial court denied defendant's motion to compel performance of the agreement notwithstanding the veto and commenced the trial, which concluded with a judgment of death.

At the time of the motion to compel, ORS 163.150(2) provided that "[w]hen the defendant is found guilty of aggravated murder upon a plea of guilty * * * and * * * the state declines to present evidence for purposes of sentencing, * * * the court shall sentence the defendant to life imprisonment as prescribed by ORS 163.105." As can be seen, the stipulation in the plea agreement tracks the language of that statute.

---

[8] Because our decision in this case is dictated by the statutes that govern a district attorney's authority to plea bargain, it is unnecessary for this court to reach defendant's state and federal constitutional claims.

On direct review of the death sentence, the parties have segregated the plea agreement issue from other assignments of error for an accelerated decision. Defendant contends that the condition — "if the parents of the alleged victim would agree" — should be disregarded and the remainder of the bargain enforced.

The state acknowledges that this condition is neither enforceable nor permitted, *i.e.*, that the state may not let the victim's family decide whether a defendant shall be executed.[1]

The state seeks to avoid enforcement of the plea agreement. It does so by urging that no one can ascertain the basis upon which the plea agreement was acceptable to the state if that condition was deleted or the considerations the state would have taken into account before deciding in the first instance whether to enter into plea discussions or an agreement, absent the impermissible veto.

I concur with the majority holding that the condition is not permitted. *Cf. Booth v. Maryland,* 482 US 496, 509, 107 S Ct 2529, 96 L Ed 2d 440 (1987) (Eighth amendment violated by statute which required placing before jury and the jury consideration of attitudes of victim's family where jury was sentencing authority in capital murder case and where material placed before the jury included son's attitude that no one "should be able to do something like that and get away with it" and daughter's attitude was she "could never forgive anyone for killing [her parents] that way."). I agree that the trial judge erred by permitting effect to be given, over objection, to the impermissible condition.[2] But I would hold that the case should have been concluded then and there, by accepting the stipulated guilty plea and the district attorney's declination to present evidence on sentencing and by imposing the statutorily mandated sentence. Because the case was not so concluded, we should remand for entry of the plea and sentence as commanded by the statute, thereby achieving finality.

I dissent from both the majority decision to remand

---

[1] We are not talking here of the right of a victim's family to speak their mind to the district attorney or the district attorney's duty to listen to what they have to say. No one questions or doubts their need or right to offer input to the decision-maker empowered by state law to plea bargain.

[2] The majority does not directly say whose error causes the remand.

the case for a hearing to determine further facts and the legally incorrect methodology employed to arrive at that result.

My disagreement with the methodology arises at four points:

(1) The stipulation is exact enough to be specifically performed; it is not ambiguous or uncertain, as is now urged. The law prohibits the state from attempting to undercut a plea agreement to which it stipulated.

(2) The specific statute should govern, not the much more general statute about plea bargaining decisions. Specific statutory terms cover the situation where the prosecutor stipulates that the state declines to present evidence on sentencing.

(3) Illegalities among the items in a plea agreement are disregarded at the request of a defendant, not used as an excuse to vitiate the agreement at the request of the prosecutor.

(4) The applicable law requires that the benefit of the bargain be specifically enforced at the request of a defendant who has relied upon the agreement, not that an *ad hoc*[3] procedure be devised to resolve the matter through a new hearing to determine what was in a former prosecutor's mind some time ago.[4]

## THE STIPULATION IS NOT AMBIGUOUS

Stripped of its impermissible condition that the family of the victim "agree," the in-court stipulation states that the defendant would plead guilty to aggravated murder and that the district attorney would accept that plea. The district attorney would decline to present any evidence. Under those conditions, the result is dictated by the statute and was

---

[3] The majority's opinion cites no authority on the merits or the methodology of their disposition.

[4] The state is represented before us by the Attorney General, not the district attorney who made the stipulation that he would accept a guilty plea to aggravated murder and would not seek the death penalty "if" the victim's family "would agree." That district attorney is no longer in that office but is now a judge of the county where the aggravated murder indictment was issued and to which the majority recommits this six-year-old case on a collateral question of fact.

included in the stipulation. The judge "shall" impose a sentence to life imprisonment as prescribed by ORS 163.150.

The district attorney cannot be assumed to have been playing cat and mouse with the defendant, gaining concessions from defense counsel and channeling his time and effort into plea bargaining just before trial, all the while knowing that the victim's parents would not agree and that the condition requiring agreement would make counsel's efforts fruitless. Instead, the stipulation represents a carefully considered official act. Whatever any other considerations in the district attorney's mind may have been, and regardless of them, the conclusion reached by the district attorney was that the death penalty was not required. As an official decision, he took a course of action, which he knew would result in a mandatory life sentence, not death. His later attempt to nullify this official position and agreement arises because of the unlawful condition — the victim's parents did not agree.

The majority's opinion offers only the following explanation:

> "The record does not show what other considerations, if any, the district attorney used in assessing the proposed plea agreement. The stipulation does not indicate, for example, whether the district attorney decided to enter into the plea agreement based on appropriate criteria but conditioned his acceptance on the victim's parents' concurrence or if the district attorney entirely delegated that decision to the victim's parents." 310 Or at 105.

Defendant has not challenged anything else the district attorney may have considered. Only the defendant appealed, not the Attorney General or the trial judge. Whether the district attorney otherwise relied on inappropriate criteria is not before this court. No one is before this court with standing to question the propriety of any other considerations in the district attorney's mind. Accordingly, this court must assume that the district attorney acted properly in performing his official duties and that he stipulated his assent to the agreed plea because he believed a life sentence was sufficient.

The prosecutor is not permitted to undercut the plea bargain before the judge but, instead, is required to support it. *See, e.g., United States v. Crusco,* 536 F2d 21 (3d Cir 1976); *United States v. Brown,* 500 F2d 375 (4th Cir 1974); *cf. United*

*States v. Ammidown,* 497 F2d 615 (DC Cir 1973); *Correale v. United States,* 479 F2d 944 (1st Cir 1973). The invitation of the state to have us believe that we cannot tell what "considerations the District Attorney took into consideration" before agreeing to the plea bargain is both contrary to law and irrelevant under the specific statute for aggravated murder plea bargains. The majority accepts the invitation. I do not.

A serious distortion of the record is required to either state or infer from it that the district attorney had not decided that the plea bargain was correct on its own merits. Likewise, a distortion of the record is required to state that a defense counsel's objections to the prosecutor's in-court statements prevented evidence of the district attorney's real state of mind concerning this aggravated murder case from coming before the court. That was not the setting or context for the objection.

The comments of the deputy district attorney, which were subject to objection by defense counsel, were not about the meaning of the stipulation at all, let alone about the meaning of the portion of the stipulation that the district attorney would accept the plea to the main charge and decline to present evidence on sentencing. Rather, the objection arose over an argument about a collateral fact asserted by defense counsel in a memorandum supporting the motion to compel. That memorandum asserted that, in very few cases in the county, did the district attorney take account of the victim's attitudes in a plea bargain. In response to that portion of the memorandum, the deputy district attorney asserted another case involving a different class of crime where the victim had been listened to in the process of working out a plea bargain. Objection was made to the assertions on the non-relevant point of whether the district attorney usually or infrequently listened to victims of other classes of crimes.

Just before the objection the prosecutor attacked the accuracy of that collateral "fact," arguing:

"Also there was a case I can recall, talking about taking victims into consideration, in late December, I dismissed a case on *State v. Thomas Finney* and I am sure the court,

"[Defense Counsel]: I object, your honor, to anything outside the record of this case. I don't know anything about *State*

*v. Thomas Finney.* It's not within the bounds of the stipulation."

After making it clear that the prosecutor's remarks were about the side argument in the memorandum, the deputy prosecutor said, "I was just responding to that statement."

Defense counsel continued his objection:

"I object to anything beyond the scope of the stipulation. We agreed here between Christmas and New Year's that there was a stipulation that we had entered into that we had reduced to writing that would obviate the need for any hearing of evidence and I would submit that simply making representations as to what one has or has not done in other cases is inappropriate."

Shortly thereafter, the following exchange took place:

"The Court:   I take it from your remarks then, [deputy district attorney], that you do not intend to call any witnesses to bolster the facts of the case of this particular hearing from either side?

"[Deputy District Attorney]:   Your honor, in my discussions with [defense counsel], once the stipulation was made his understanding of my agreement is that I would be prohibited from doing that."[5]

The court then sustained the objection to introduction of any evidence "that was by representation."

### THE SPECIFIC STATUTE APPLIES

Specific statutes, rather than general ones, are to be used when conflicts between them arise. ORS 174.020 ("when a general and particular provision are inconsistent, the latter is paramount to the former"); *Colby v. Larson,* 208 Or 121, 126-27, 297 P2d 1073, 299 P2d 1076 (1956); *Ricker v. Ricker, Administratix,* 201 Or 416, 424, 270 P2d 150 (1954). The 1987 legislature enacted, as a new subsection 2 of ORS 163.150, the

---

[5] The state may not lead the defendant to accept one agreement and then undercut it unilaterally by half-hearted support or weaseling interpretations. *United States v. Brown,* 500 F2d 375 (4th Cir 1974) (prosecutor fails to live up to his part of the plea bargain unless he supports the result recommended with some degree of advocacy). *See also Santobello v. New York,* 404 US 257, 92 S Ct 495, 30 L Ed 2d 427 (1971); *United States v. Crusco,* 536 F2d 21 (3d Cir 1976) (prosecutor promising to take no position precluded from making any response to argument of defense counsel at sentencing).

mandatory sentencing provisions upon which defendant relies to obtain a life sentence. Or Laws 1987, ch 557, § 1. That 1987 amendment provided:

> "When the defendant is found guilty of aggravated murder upon a plea of guilty * * * prior to the introduction of evidence before the trier of fact and the state advises the court on the record that the state declines to present evidence for purposes of sentencing, the court shall not conduct a sentencing proceeding * * * but the court shall sentence the defendant to life imprisonment as prescribed by ORS 163.105."

The original statute section amended was adopted by initiative in 1984 and became Oregon Laws 1985, chapter 3, section 3. The initiative dealt exclusively with aggravated murder, as does ORS 163.150 presently.

Concerning the subject at issue, the statute with its 1987 amendment was in 1988 the complete scheme for dealing with guilty pleas to a charge of aggravated murder. The purpose of the amendment was to obviate any role for, or recourse to, a jury sentencing procedure in the event of a guilty plea to aggravated murder. No reference to earlier enacted statutes dealing in general terms with plea bargaining is required or authorized by the plain words of the specific statute. The specific statute prescribes in mandatory language the effect of a plea of guilty and a district attorney's statement that the state declines to present evidence for sentencing.

The trial court does not have discretionary power to reject the plea to an aggravated murder bargain that it normally would have concerning other plea bargains under the more general provisions of ORS chapter 135. The legislation provides that the judge "shall" enter a sentence of life imprisonment. There is no office left for ORS 135.432(4) and its cross-reference to ORS 135.415 to fill. The specific provisions of ORS 163.150 provide what the judge "shall" do.

In any event, ORS 135.415 and ORS 135.432(4) are addressed to different problems, stated in terms of whether the district attorney may "engage in plea discussions for the purpose of reaching a plea agreement" and whether the trial judge "may reach an independent decision on whether to grant sentence concessions under the criteria set forth in ORS 135.415." They may authorize a district attorney to refuse to engage in plea discussions, but that is not this case. They may

authorize a trial judge to override an overly generous concession made by a district attorney, but that is not this case. This is a case where the defendant agreed to plead guilty to the most significant charge, not some lesser offense, and to all charges made, not just some of them.

While questions about voluntariness, defendant's understanding of the effect of his plea, and whether the facts confessed constitute the crime charged are still open to the trial court under the requirements of due process, the issue of whether the plea bargain is based on the 1973 general statute's discretionary considerations is not a matter for court review under the specific 1987 statute involving a plea of guilty to aggravated murder. The specific statute for aggravated murder pleas must be applied.[6]

## ILLEGALITIES IN A PLEA BARGAIN ARE DISREGARDED

In a criminal setting, courts disregard a legally impermissible condition. *Palermo v. Warden, Green Haven State Prison,* 545 F2d 286, 294-97 (2d Cir 1976); *People v. Macrander,* 756 P2d 356, 359-61 (Colo 1988); *State v. Miller,* 110 Wash 2d 528, 756 P2d 122, 126 (1988); *See also State v. Schaupp,* 111 Wash 2d 34, 757 P2d 970, 972 (1988) (false explanation of basis of agreement).

Many courts employ contract analysis as a bottom line in this phase of a plea-bargain case. As a recent federal decision states:

> "Given the relative interests implicated by a plea bargain, we find that the costs of an unclear agreement must fall upon the government. While we affirm the general applicability of contract law principles, we hold that the government must shoulder a greater degree of responsibility for lack of clarity in a plea agreement."

*United States v. Giorgi,* 840 F2d 1022, 1026 (1st Cir 1988). *See United States v. Harvey,* 791 F2d 294, 300 (4th Cir 1986).

For state cases, *see, e.g., Ex Parte Yarber,* 437 So2d

---

[6] Even if the general statute were applicable as the majority insists, without citing authority, the trial court still would not have discretion to refuse to accept the guilty plea because of the specific provisions of ORS 163.150. *See United States v. Ammidown,* 497 F2d 615 (DC Cir 1973).

1330, 1334 (Ala 1983); *State v. Georgeoff,* ___ Ariz ___, 788 P2d 1185, 1188 (1990) ("breach of a plea agreement must not be raised for the first time on appeal"); *People v. Shepeard,* 169 Cal App 3d 580, 586, 215 Cal Rptr 401 (1985) ("plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound"), *disapproved on other grounds People v. Martin,* 42 Cal 3d 437, 229 Cal Rptr 131, 722 P2d 905, 915 n 13 (1986); *People v. Macrander, supra,* 756 P2d at 359-61; *Shields v. State,* 374 A2d 816, 819 (Del), cert den 434 US 893 (1977); *Lopez v. State,* 536 So2d 226, 229 (Fla 1988); *State v. Yoon,* 66 Haw 342, 662 P2d 1112, 1116 (1983); *State v. Rutherford,* 107 Idaho 910, 693 P2d 1112, 1116 (Ct App 1985); *People v. Wolfe,* 156 Ill App 3d 1023, 510 NE2d 145, 148, *appeal denied* 517 NE2d 1094 (1987); *Spivey v. State,* 1990 Ind App Lexis 499, ___ NE2d ___ (April 30, 1990); *Parker v. State,* 542 NE2d 1026, 1028 (Ind App 1989); *Boge v. State,* 309 NW2d 428, 430 (Iowa 1981); *State v. Smith,* 244 Kan 283, 767 P2d 1302, 1303-04 (1989); *State v. Wills,* 244 Kan 62, 765 P2d 1114, 1120 (1988) (even an ambiguous plea agreement must be strictly construed in favor of defendant); *Com. v. Reyes,* 764 SW2d 62, 65 (Ky 1989); *State v. Lewis,* 539 So2d 1199, 1204 (La 1989); *State v. Brockman,* 277 Md 687, 357 A2d 376, 383 (1976); *State v. Williams,* 418 NW2d 163, 168 (Minn 1988); *Wright v. McAdory,* 536 So2d 897, 901 (Miss 1988); *State v. Jones,* 1990 Mo App Lexis 764, ___ SW2d ___ (May 15, 1990) (if there is a claim of ambiguity "costs of an unclear agreement must fall upon the government" (quoting *United States v. Giorgi, supra,* 840 F2d at 1026)); *State v. Dinndorf,* 202 Mont 308, 658 P2d 372, 373 (1983); *State v. Thomas,* 61 NJ 314, 294 A2d 57, 60-61 (1972); *State v. Collins,* 300 NC 142, 265 SE2d 172, 176 (1980); *State v. Thorstad,* 261 NW2d 899, 902 (ND), *cert den* 436 US 906 (1978); *State v. Malone,* 568 A2d 1378, 1380 (RI 1990); *State v. Turner,* 713 SW2d 327, 330 (Tenn Cr App), *cert den* 479 US 933 (1986); *Ex Parte Williams,* 637 SW2d 943, 947 (Tex Cr App 1982), *cert den* 462 US 1108 (1983); *State v. Byrne,* 149 Vt 224, 542 A2d 276, 277 (1988); *State v. Hall,* 104 Wash 2d 486, 706 P2d 1074, 1076 (1985); *Myers v. Frazier,* 319 SE2d 782, 796 n 21 (W Va 1984); *State v. Rivest,* 106 Wis 2d 406, 316 NW2d 395, 399 (1982); *cf.* Jones, *Negotiation, Ratification, and Rescission of the Guilty Plea Agreement: A Contractual Analysis and Typology,* 17 Duq

L Rev 591 (1978-1979); Comment, *Where Promises End: Prosecutorial Adherence to Sentence Recommendation Commitments in Plea Bargains,* 52 U Chi L Rev 751 (1985). *But see, e.g., People v. Reagan,* 395 Mich 306, 235 NW2d 581, 585 (1975) ("here the analogy to contract law is inappropriate to evaluate agreement not to prosecute" which was enforced nonetheless); *State v. Doe,* 103 NM 178, 704 P2d 432, 435 (NM App 1984) (rejecting contract law as basis for interpreting agreement not to prosecute, relying on *Selikoff, infra); People v. Selikoff,* 35 NY2d 227, 360 NYS2d 623, 318 NE2d 784, 791-92 (1974), *cert den* 419 US 1122 (1975) (application of contract law to plea negotiations is "incongruous" because "[t]he strong public policy of rehabilitating offenders, protecting society, and deterring other potential offenders presents considerations paramount to benefits beyond the power of individuals to 'contract.' " However, the result is consistent with contract analysis, and the opinion employs contract terminology).[7]

Oregon courts considering plea agreements have employed contract terminology. *State v. Snider,* 296 Or 168, 172, 674 P2d 585 (1983) (referring to plea agreement as "the contract"); *Brock v. Wright,* 98 Or App 323, 326, 778 P2d 999 (1989) (meeting of the minds required for enforceable plea agreement). *But cf. State v. Allen,* 79 Or App 674, 720 P2d 761, *rev den* 301 Or 765 (1986) (finding, inexplicably, no authority for proposition that contract law applies to review of plea agreement and noting that the plea agreement did not grant immunity from prosecution for murder even if the parol evidence rule applied).

Oregon disregards the illegality and enforces the contract. *W. J. Seufert Land Co. v. Greenfield,* 262 Or 83, 87, 496 P2d 197 (1972) (where part of contract contrary to public policy is separable, remaining provisions of contract will be enforced); *Eldridge et al. v. Johnston,* 195 Or 379, 405, 245 P2d 239 (1952) (where a contract is partly legal and partly illegal, the legal part of the contract will be enforced where separable from the illegal part); *Fisher v. Lane,* 174 Or 438, 448, 149 P2d

---

[7] Some of these cases involve potentially ambiguous agreements. They are cited for the proposition that courts employ contract analysis. Where, as here, the agreement stipulated is not ambiguous, they offer authority that the state may not benefit from creating an ambiguity in the agreement.

562 (1944) (where refusal to enforce illegal contract provision would produce harmful effect on party for whose protection law making contract provision illegal exists, enforcement or rescission, whichever is appropriate, is allowed); *Hagen v. O'Connell, Goyak & Ball,* 68 Or App 700, 704, 683 P2d 563 (1984) (where entire agreement is not contrary to public policy, severable provision which is so contrary is invalid but remaining provisions may be enforced); *cf. Walsh v. Schlecht,* 429 US 401, 408, 97 S Ct 679, 50 L Ed 2d 641 (1977) ("ambiguously worded contracts should not be interpreted to render them illegal and unenforceable where the wording lends itself to a logically acceptable construction that renders them legal and enforceable").

## BARGAIN ENFORCED AT DEFENDANT'S REQUEST

Following a United States Supreme Court decision, the Oregon Court of Appeals stated:

> "Recently the United States Supreme Court held the practice of plea bargaining to be an 'essential' and 'desirable' part of the administration of criminal justice when 'properly administered.' *Santobello v. New York,* 404 US 257, 92 S Ct 495, 30 L Ed 2d 427, 432 (1971). One element of proper administration is:
>
> > '* * * [W]hen a plea [of guilty] rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' *Santobello v. New York, supra,* 404 US at 262.' "

*Stewart v. Cupp,* 12 Or App 167, 168, 506 P2d 503 (1973).

The *Santobello* decision is still the law of the land. *Mabry v. Johnson,* 467 US 504, 509, 104 S Ct 2543, 81 L Ed 2d 437 (1984) (on federal habeas corpus concerning a state court sentence entered on a guilty plea, where the exact bargain made prior to the plea was expressly enforced in the sentence entered, holding that there is no due process right to withdraw plea "in no sense induced by the prosecutor's withdrawn offer" of a lesser sentence offered two years before the plea at issue was entered).

The effect of *Santobello* has been explained, in language apt to this case, as follows:

> "We must lastly observe, because of the government's

argument here, that a prosecutorial failure to fulfill a promise or to make a proper promise is not rendered harmless because of judicial refusal to follow the recommendation or judicial awareness of the impropriety. In *Santobello, supra,* the trial judge had explicitly stated that 'It doesn't make a particle of difference what the District Attorney says he will do, or what he doesn't do.' 404 U.S. at 259, 92 S.Ct. at 497, and the Supreme Court saw 'no reason to doubt that,' *id.* at 262, 92 S. Ct. 495. It nevertheless concluded that the defendant was entitled to relief. The reason is obvious; it is the defendant's rights which are being violated when the plea agreement is broken or meaningless. It is his waiver which must be voluntary and knowing. He offers that waiver not in exchange for the actual sentence or impact on the judge, but for the prosecutor's statements in court. If they are not adequate, the waiver is ineffective.

"We reach then the question of remedy. The right is to have the promise fulfilled. In *Santobello,* the Court listed the remedies as either 'specific performance of the agreement' or 'the opportunity to withdraw his plea', 404 U.S. at 263, 92 S.Ct. at 499. Appellant now seeks only the former."

*Correale v. United States, supra,* at 949.

Other courts enforce the plea agreement, even though a guilty plea has not yet been entered, where a defendant has acted in reliance on the plea bargain. *United States v. Garcia,* 519 F2d 1343 (9th Cir 1975); *People v. Reagan, supra,* (agreement not to prosecute); *see also Ex Parte Yarber, supra,* (defendant who had not yet detrimentally relied on unwritten negotiated plea agreement could not bind trial court to accept it but could compel tender of agreement to trial court); Westen & Westin, *A Constitutional Law of Remedies for Broken Plea Bargains,* 66 Cal L Rev 471, 536 (1978).

Defendant relied upon the agreement and attempted to have the unlawful-as-against-public-policy condition deleted with the aid of the court. Before trial, he told the trial judge[8] that he considered himself guilty as charged. He also

---

[8] The same circuit judge presided over the subsequent jury trial knowing that it was likely that defendant considered himself guilty as charged. No one contends that a murder trial conducted by a judge who knows before trial starts that the defendant likely considers himself guilty as charged results in reversible error, but creation of a detriment to the defendant may be properly claimed. *Cf. Bruton v. United States,* 391 US 123, 88 S Ct 1620, 20 L Ed 2d 476 (1968) (jury cannot be relied on to disregard, upon instruction, confession of codefendant, which implicates objecting defendant,

agreed to, and did, stipulate that he caused the death of Mrs. Keever by cutting her with a knife. That stipulation was introduced in the subsequent jury trial. His defense counsel's energy and time were expended in the weeks just prior to trial toward working out the stipulated guilty plea and enforcing it, as the record discloses. He could have been working on issues related to a trial on the merits. These detriments suffered in fact should be balanced by providing defendant the benefit of the bargain. His guilty plea should be entered as of the procedural stage of the case when he sought to compel enforcement, *i.e.,* before trial commenced. ORS 163.150, in effect in 1988, mandates the result of life imprisonment defined under the terms of that statute.

I would reverse and remand to the circuit court for acceptance of plea as stipulated and resentencing as provided in the statute.

---

where confessing codefendant does not testify and thus cannot be cross-examined); *Jackson v. Denno,* 378 US 368, 84 S Ct 1774, 12 L Ed 2d 908 (1964) (jury cannot be relied on to consider truthfulness and voluntariness of confession). While these cases involve jurors, not judges, the invalidation of decisions made by human beings because they may not have been fully able to separate knowledge of guilt from their decision, where required by law to make such separation, reflects an understanding about human intellect and psychology. A detriment is suffered by a defendant when decisions presupposing absolute impartiality are made in a trial of guilt or innocence by one who knows the subject of the trial likely believes himself guilty as charged. No indication that this was an *Alford* plea is present or hinted in the record.